## A94A1280, A94A1281. RESURGENS PLAZA SOUTH ASSOCIATES et al. v. CONSOLIDATED ELECTRIC SUPPLY, INC.; and vice versa.

(452 SE2d 784)

SMITH, Judge.

This action for foreclosure of a materialman's lien arose out of interior finish work performed in an office building owned by Resurgens Plaza South Associates ("Resurgens"). Summit Commercial Contractors, Inc., the general contractor employed by Resurgens, subcontracted with DCG Electrical Construction, Inc. ("DCG") to perform electrical work on several projects in the building, including the "M.D.S. Tenant Buildout" at issue here. DCG in its turn ordered materials from Consolidated Electric Supply, Inc., d/b/a B & W Electric Supply ("Consolidated") to perform the electrical work. When DCG failed to pay for the materials, Consolidated filed a lien against the real property on February 19, 1991, and later brought an action to foreclose on the lien. After a jury verdict in favor of Consolidated, Resurgens appealed in Case No. A94A1280. Consolidated cross-appealed in Case No. A94A1281.

1. In Case No. A94A1280, Resurgens contends the trial court erred in denying its motions for directed verdict and for judgment n.o.v.

"In determining whether the trial court erred by denying (appellant's) motions for a directed verdict and motion for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom demands a certain verdict." (Citations and punctuation omitted.) *Parks v. Howard*, 197 Ga. App. 405, 407 (4) (398 SE2d 308) (1990); *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992). There were substantial conflicts in the evidence presented here.

The parties disputed whether the underlying lien was filed within three months after the final delivery of goods to the project, thus satisfying the requirements of OCGA § 44-14-361.1 (a). The key invoice at issue is defendant's Exhibit 155, Consolidated invoice 108088, showing two items identified only by a product number of the manufacturer, Boyd.[1] A cross-referenced manufacturer's invoice 009204 from Boyd identifies them further as "Prometheus" model wall brackets in polished brass. The Boyd invoice shows the order was placed on October 10, 1990, and the wall brackets were delivered on December

---

[1] We need not consider the second invoice for goods delivered within the three-month period, because the first creates a disputed issue of fact for the jury.

10, 1990.

Resurgens in essence contends that the delivery made on December 10, 1990, was not part of the underlying contract, but a separate agreement between DCG and a tenant, thus providing no support for the claim of lien and showing that Consolidated failed properly to allocate charges between the two separate agreements. It bases these contentions on defendant's exhibit 158, identified as a statement from the electrical subcontractor, DCG, and allegedly referring to the same two wall lighting fixtures. The DCG statement reads only: "MDS/Furnished and installed (2) extra wall sconces," with amounts charged for material and labor. The wall sconces are not identified by product number or name, and no date of order or delivery is stated.

According to Lisa Shirley, the property manager for Resurgens, the DCG statement was issued pursuant to a request by the owner's construction supervisor, Jerry Schaeffer, to DCG. Schaeffer did not testify. Shirley also opined that the DCG statement was based on a separate contract between the tenant and DCG, because the request was made by the tenant after the space was built out, sometime in November or December.[2]

A directed verdict was not proper based on the contention that the DCG statement was for the same items as Consolidated invoice 108088 and Boyd invoice 009204, and thus showed the existence of a separate contract, for several reasons. First, if the tenant's request was not made until November or December, as Shirley testified, the October order memorialized in the Boyd and Consolidated invoices predates the tenant's request and therefore cannot reflect the same materials. Second, the DCG statement refers to "wall sconces" without identifying them by manufacturer or product number, while the Boyd invoice refers to "Prometheus wall brackets" with a particular product number. Finally, the DCG statement gives a unit price of $392.50 for each "wall sconce," while the Consolidated invoice gives a unit price of $695 for each "Prometheus wall bracket."

Given these unexplained inconsistencies, it cannot be said that Resurgens presented uncontradicted evidence that the delivery made on December 10, 1990 was part of a separate contract with the tenant. Contrary to the dissent's contention, the issuance of a certificate of substantial completion, release of retainage, or other activity under the construction contract does not bar a claim of lien. See *Sasser & Co. v. Griffin*, 133 Ga. App. 83, 84-85 (1) (210 SE2d 34) (1974). The testimony and documents should have been, and were, weighed by a

---

[2] We note that hearsay standing alone cannot support a verdict, even if unobjected to. See *Finch v. Caldwell*, 155 Ga. App. 813 (273 SE2d 216) (1980). No individual with direct personal knowledge, such as Schaeffer himself, testified to the existence of a separate contract as opposed to a change order.

jury, and we should not disturb its findings on this issue.

2. In Case No. A94A1281, Consolidated contends the trial court erred in its charge to the jury on the issue of payment allocations to various accounts of the subcontractor, DCG. Consolidated contends the duty of a materialman to inquire as to the appropriate destination of a particular payment is limited to circumstances where the subcontractor fails to indicate the proper account for allocation. Therefore, it contends, the trial court erroneously failed to instruct the jury that Consolidated was only required to seek further information about the source of a particular payment if DCG failed to designate an account for allocation.

However, a review of the trial court's instructions to the jury shows that it clearly stated the requirements that Consolidated credit all invoices according to the instructions of DCG when it made payments and that it contact DCG for directions as to how to apply a payment if no instructions came with the payment. This requirement was repeatedly mentioned in later portions of the instructions. While some details of the charge could have been more clearly worded, viewing the charge as a whole as we are required to do, *Dept. of Transp. v. Lawrence*, 212 Ga. App. 72, 73 (441 SE2d 81) (1994), we find no error.

3. In its final enumeration of error, Consolidated contends the form of the verdict was erroneous in that it allowed the jury to return a verdict in an amount less than the full amount sued for. However, no objection was made to the form of the verdict at trial; in fact, counsel for Consolidated apparently drafted the verdict form. Consolidated therefore waived its right to object on appeal. *Southern Cellular Telecom v. Banks*, 208 Ga. App. 286, 289 (7) (431 SE2d 115) (1993).

*Judgments affirmed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson, Blackburn and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as I do not agree that the receipts cited by the majority authorized a jury issue as to whether Consolidated delivered goods for the M.D.S. tenant buildout project on December 10, 1990, so as to bring Consolidated's lien within the three-month window prescribed by OCGA § 44-14-361.1 (a). In my view, the record indicates that the two fixtures delivered on December 10, 1990, were not part of the running account covered by the subcontract between DCG and Summit, but were ordered pursuant to a separate and distinct agreement between Resurgens and DCG. Thus, the last delivery of material DCG needed to complete its contract with Summit was on October 23, 1990, i.e., more than three months before Consolidated

filed a lien against the premises.[3]

Georgia's lien laws are in derogation of the common law and must be strictly construed against the lien claimant. *Benning Constr. Co. v. Dykes Paving &c. Co.*, 263 Ga. 16, 18 (426 SE2d 564). To this extent, it is not only incumbent upon the lien claimant to keep separate accounts and to find out upon what account money is to be paid, the lien claimant must likewise accurately determine upon what project materials are supplied. See *Apex Supply Co. v. Commercial Union Ins. Co.*, 143 Ga. App. 131, 132 (237 SE2d 649); *Sears, Roebuck & Co. v. Superior Rigging &c. Co.*, 120 Ga. App. 412, 413 (1) (170 SE2d 721). To say otherwise would allow a lien claimant to use an invoice under one contract to bootstrap invoices under another contract under which lien rights have long since expired.

In the case sub judice, Consolidated not only failed to accurately prove that the December 10, 1990, invoice was for the M.D.S. project, my study of the evidence shows that the fixtures delivered by Consolidated on December 10, 1990, were part of a project separate from the M.D.S. tenant buildout project. To this extent, I observe that Resurgens' property manager, Lisa Shirley, clarified that the two fixtures Consolidated delivered on December 10, 1992, were ordered by the tenant who took possession of the M.D.S. space, not by DCG pursuant to completion of the M.D.S. tenant buildout project. This testimony is supported by undisputed proof that a certificate of occupancy issued for the M.D.S. space on October 6, 1990; that the M.D.S. tenant then moved into the space and that the final "punchlist" work was completed on the M.D.S. buildout project at the end of November 1990. Consequently, it is my view that the December 10, 1990, delivery of goods could not possibly have been attributed to the M.D.S. buildout project; that the last date materials were delivered on the M.D.S. project was October 23, 1990, and that Consolidated filed its lien outside the three-month window prescribed by OCGA § 44-14-361.1 (a). I would therefore reverse the trial court's order denying Resurgens' motion for directed verdict and motion for judgment n.o.v. based on an untimely filing of Consolidated's lien against the premises. See *Cherokee Culvert Co. v. Gurin*, 153 Ga. App. 296 (1) (265 SE2d 106). Compare *Schwan's Sales Enterprises v. Martin Mechanical Contractors*, 202 Ga. App. 510 (1) (414 SE2d 727) and *Troup Enterprises v. Mitchell, Carrington & Rayfield, Inc.*, 199 Ga.

---

[3] Consolidated asserts there is evidence that it provided other material under the contract between DCG and Summit in December 1990, thereby bringing its lien within the three-month window prescribed by OCGA § 44-14-361.1 (a). This assertion is not supported by the record. An examination of the trial transcript and the exhibits introduced into evidence at trial reveals that the goods Consolidated refers to were provided on a project DCG was involved with on another floor of Resurgens Plaza, i.e., the "Tiger" project.

App. 173, 174 (1) (404 SE2d 337) (physical precedent only), where genuine issues of material fact remained regarding work to be performed under original construction contracts.

DECIDED DECEMBER 5, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994 —

J. Michael Welch, for appellants.
Zachary & Segraves, J. Ed Segraves, Finn Duerr, for appellee.